UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steven M. Gieneart,

Plaintiff,

v.

Seagate Technology, L.L.C.,

Defendant.

Civ. File No. 01-987 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendant's Motion for Summary Judgment on Plaintiff's claims for disability discrimination and retaliation. For the following reasons, the Court grants the Motion.

**BACKGROUND**

Plaintiff Steven M. Gieneart worked for Defendant Seagate Technology, L.L.C. ("Seagate"), a computer technology firm that manufactures disk drives and component parts. Gieneart worked for Seagate from 1984 to August 1999, when he was discharged because of his disability. Gieneart primarily suffered from a congenital back injury, first diagnosed in 1980. In addition, Gieneart has been diagnosed with bi-polar disorder, among other psychological impairments. In 1997, Dr. Gregory Salmi concluded that Gieneart could not work for longer than an 8-hour shift due to the severity of Gieneart's back injury. The parties dispute whether or not Gieneart provided Seagate with notice of that restriction. In February 1999, Dr. Salmi wrote a note to Seagate, indicating that Gieneart suffered from a sever

FILED APR 03 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD APR 03 2003
DEPUTY CLERK

chronic spinal disorder and restricting him from working longer than 8-hour shifts. This time, there is no dispute that Gieneart provided the note to Seagate. One week later, on February 19, 1999, Seagate received an additional notice from Dr. Salmi that Gieneart was totally disabled and would be unable to work until through August 1999.

Gieneart underwent back surgery to treat his malady. After surgery, Seagate claims that it received no further medical documentation of any kind from Gieneart. On or about August 16, 1999, Gieneart's counsel contacted Seagate, requesting an extension of his medical leave. However, this request was not accompanied by any medical documentation, as required by the express provisions of Seagate's medical leave policy. Therefore, Seagate denied the request to extend Gieneart's medical leave. Because Gieneart was, at the time, completely unable to work, Seagate terminated his employment when his medical leave expired on August 19, 1999. After his termination, Gieneart continued to be totally disabled. He applied for and received Social Security Disability Insurance benefits because of his total disability.

Gieneart's Amended Complaint (Clerk Doc. No. 8) alleges that Seagate violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, in its treatment of Gieneart because it failed to accommodate his disability and terminated his employment. In addition, the Complaint alleges a retaliation claim against Seagate. Gieneart further contends that he was paid insufficient amounts of short-term, supplemental short-term and long-term disability benefits because he was not paid for the overtime work that he occasionally

performed. In response, Seagate argues that Gieneart has failed to make a prima facie case of disability discrimination under the ADA. Seagate contends that Gieneart received all of the benefits to which he was entitled. According to Seagate, the short-term disability policy expressly excludes overtime pay. Likewise, the long-term disability benefits are calculated using the base salary only, excluding overtime pay. Further, Seagate denies that it failed to accommodate Gieneart's disability as a matter of law. Finally, Seagate argues that Gieneart has also failed to establish a prima case of retaliation under the ADA because he has not presented evidence of a connection between the adverse employment decisions and Gieneart's allegedly protected activities.

**STANDARD OF REVIEW**

Seagate moves for summary judgment pursuant to Rule 56(c), which provides that such a motion shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank, 92 F.3d 740, 747 (8th Cir. 1996).

The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts

in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).

## DISCUSSION

### A. Disparate Treatment Claim

The Court construes Gieneart's discrimination claim as four separate counts of disparate treatment. First, Gieneart claims that Seagate failed to accommodate his disability in response to his first request in 1997. Second, he argues that Seagate also failed to accommodate his disability after a second request in 1999. Third, Gieneart argues that his discharge from Seagate constitutes a separate ADA violation. Fourth, and finally, Gieneart contends that Seagate has withheld benefits from him because of his disability. All of Gieneart's claims lack merit.

The parties dispute whether Gieneart notified Seagate of his doctor's 1997 recommendation that he work no longer than an 8-hour shift. However, this impasse makes little difference in the instant case because Gieneart has failed to exhaust his administrative remedies for claims that predate the period noted by Gieneart in his grievance before the Equal Employment Opportunity Commission: January 1, 1998 to August 19, 1999. A plaintiff must allege claims in its complaint that are reasonably related to or that grow out of the substance of the allegations in the administrative charge. See Kells v. Sinclair Buick–GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000). The 1997 accommodation claim does not grow out of, nor is it reasonably related to, the 1999 claim, despite the fact that both

concern the same disability. Therefore, the Court finds that Gieneart has failed to exhaust his administrative remedies for the 1997 accommodation claim and that claim is not properly before the Court.

There is no dispute that Gieneart requested an 8-hour shift accommodation from Seagate in early 1999. Seagate complied with this accommodation until a week later, when Gieneart's doctor provided a new work restriction stating that Gieneart was totally disabled. Because Gieneart was completely disabled, as discussed more fully below, Seagate could not "accommodate" him. He was unable to work and no accommodation would have made it possible for him to work. Seagate's conduct is neither discriminatory nor violative of the ADA.

The heart of Gieneart's claim lies in the termination and alleged denial of benefits that Gieneart believes occurred because of his disability. However, because Gieneart was by his own account totally disabled at the time of his termination, he fails to establish a prima facie case of disability discrimination. "To establish a prima facie case of disability discrimination under the ADA, [Gieneart] must show that (1) [he] is disabled as defined in 42 U.S.C. § 12102(2); (2) [he] is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) [he] has suffered an adverse employment action because of [his] disability." Alexander v. Northland Inn, No. 02-1744, 2003 WL 865072, — F.3d — (8th Cir. Mar. 5, 2003) (quoting Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995)).

Seagate contends that because Gieneart was totally disabled, he was not "qualified to perform the essential functions" of his job. Nor was there any accommodation that Seagate could have provided him that would have made it possible for him to work. Gieneart has requested and received disability benefits from the Social Security Administration and represented to them that he was totally disabled. However, the Supreme Court has held that statements to the Social Security Administration do not automatically preclude a successful suit under the ADA. Cleveland v. Policy Mgmt. Sys., 526 U.S. 795, 805 (1999). "Where an employee has sworn in an application for disability benefits that he is unable to work at any job," as Gieneart did here, "he must proffer a sufficient explanation to warrant a reasonable juror's concluding that . . . the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" Id. at 807, quoted in Lane v. BFI Waste Sys. of N. Am., 257 F.3d 766, 769 (8th Cir. 2001); see also Lloyd v. Hardin County, 207 F.3d 1080, 1084 (8th Cir.2000). Here, Gieneart has not offered any explanation or evidence to show that, at the time that Seagate terminated his employment, he could perform the essential functions of his job with or without reasonable accommodation. Instead, the record reflects that Gieneart represented both to the Social Security Administration and to Seagate that he was totally disabled during this very period. The ADA does not apply and Gieneart has failed to establish a question of fact on whether his termination violated the ADA.

Finally, Gieneart claims that Seagate wrongfully withheld benefits from him because his overtime hours were not included in the disability payments he received. However, the benefits programs in which Gieneart participated calculated benefits according to an employee's base salary, exclusive of overtime pay. The Court finds that Seagate did not discriminate against Gieneart on the basis of disability where it simply abided by the conditions of its policy, irrespective of the recipient's disabled status. Therefore, the record contains no issues of fact on the fourth aspect of Gieneart's disparate treatment claim.

**B. Retaliation Claim**

"To prove his claim for retaliation, [Gieneart] ha[s] to show that he engaged in activity protected under the Americans with Disabilities Act, that he suffered an adverse employment action, and that there is a causal connection between the protected activity and the adverse action." Salitros v. Chrysler Corp., 306 F.3d 562, 569 (8th Cir. 2002) (citing 42 U.S.C. § 12203)). In this case, Gieneart engaged in protected activity when he filed his charge of discrimination on June 13, 2000, nearly an entire year after the adverse employment action occurred. There is no causal connection where the adverse action predates the protected activity. See, e.g., Basset v. City of Minneapolis, 211 F.3d 1097, 1106 (8th Cir. 2000) (finding that a causal connection under Title VII exists only when retaliatory conduct followed the protected activity). Gieneart has failed to establish a prima facie case of retaliation.

**CONCLUSION**

The record in this case contains no questions of fact on whether Gieneart has established a prima facie case of disability discrimination under the ADA. Instead the record shows that Seagate did not discriminate against Gieneart on the basis of disability. Likewise, Gieneart also fails to establish a prima facie case of retaliation. Accordingly, after review of the record, files, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Doc. No. 51) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 3, 2003

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995